**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| LULULEMON ATHLETICA CANADA INC., | ) ) ) | Case No. 13-cv-6297 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | ) ) ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT

Plaintiff Lululemon Athletica Canada Inc. ("Lululemon") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq. 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331.  This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.      Venue is proper in this Court pursuant 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in Illinois and causes harm to Lululemon's business

within this Judicial District. Through at least the fully interactive commercial Internet websites operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"), each of the Defendants has targeted and solicited sales from Illinois residents by operating online stores that offer shipping to Illinois, accept payment in U.S. dollars and, on information and belief, has sold counterfeit Lululemon products to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Lululemon substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Lululemon to combat online counterfeiters who trade upon Lululemon's reputation and goodwill by selling and/or offering for sale unlicensed and counterfeit products and services featuring the LULULEMON Trademarks (the "Counterfeit Lululemon Products" and "Counterfeit Lululemon Services" as appropriate). The Defendants create the Defendant Internet Stores by the hundreds or even thousands and design them to appear to be selling genuine Lululemon products and providing genuine Lululemon retail store services, while actually selling low-quality Counterfeit Lululemon Products and providing Counterfeit Lululemon Services to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as website design and similarities of the Counterfeit Lululemon Products and Services offered for sale, suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope of their massive counterfeiting operation. Lululemon is forced to file this action to combat Defendants' illegal counterfeiting of the registered LULULEMON Trademarks, as well as to protect

unknowing consumers from purchasing low-quality Counterfeit Lululemon Products and Services over the Internet. Lululemon has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable LULULEMON Trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4.      Lululemon is a yoga-inspired athletic apparel company founded in Vancouver, British Columbia, Canada (where it continues to be based) in 1998 by Dennis "Chip" Wilson that creates unique athletic apparel and accessories. Lululemon sells many high-quality products, including but not limited to, clothing and apparel such as shirts, jackets, sweat pants, yoga pants, tank tops, sweatshirts, sports bras, shorts, caps and headbands; as well products other than clothing such as yoga mats, bags, and accessories (these and other genuine Lululemon branded products referred to herein as "Lululemon Products"). While Lululemon has its roots in yoga, Lululemon Products are increasingly used for other athletic and casual lifestyle pursuits, such as running and general fitness. Lululemon works with local athletes and fitness practitioners to enhance Lululemon brand awareness. Lululemon Products are designed to offer performance, fit and comfort while incorporating both function and style. Lululemon's heritage of combining performance and style distinctly positions Lululemon to address the needs of athletes as well as a growing core of consumers who desire everyday casual wear that is consistent with their active lifestyles. Lululemon provides branded retail store services, including over the internet ("Lululemon Services"), to carefully control customer experiences and further enhance the appeal of the Lululemon brand.

5.      Since its founding in 1998, the unique and highly desirable Lululemon Products and Services have led to enormous growth and financial success for Lululemon.  In 2012 Lululemon reported revenue of $1.4 Billion and over $250 Million in net income.  The company went public on the NASDAQ stock exchange in 2007, and Lululemon's current market capitalization exceeds $8 Billion.

6.      The root of this financial success lies in Lululemon's ability to consistently deliver highly desirable Products and Services.  Lululemon Products and Services have become enormously popular and even iconic, driven by Lululemon's arduous quality standards and innovative design.  Among the purchasing public, genuine Lululemon Products and Services are instantly recognizable as such.  In the United States and around the world, the Lululemon brand has come to symbolize high quality, and Lululemon Products are among the most recognizable athletic apparel in the world.

7.      The prestige of the Lululemon brand is further enhanced by careful distribution of Lululemon Products using a vertical model in which Lululemon provides retail store services to operate its own Lululemon branded stores.  Lululemon Products are sold exclusively through Lululemon's 135 distinctive retail stores, including four in Chicago (one of which is located in the exclusive Michigan Avenue shopping district), as well as through certified partners that offer Lululemon gear in premium yoga studios, gyms, and/or wellness centers.  Lululemon's retail store services are provided through operation of these branded stores.  Lululemon's vertical retail strategy allows Lululemon to interact more directly with their customers and to tightly control the consumer's retail experience.

8.      Providing genuine Lululemon branded retail store services over the internet to sell genuine Lululemon Products is an important part of Lululemon's business strategy.  Since at

4

least 2009, Lululemon has operated a website at <Lululemon.com> where it provides retail store services and promotes and sells genuine Lululemon Products. In fiscal 2012, retail store services provided via the <Lululemon.com> website generated revenue in excess of $100 Million. The <Lululemon.com> website features proprietary content, images and designs exclusive to Lululemon.

9.     Lululemon's cultural and community-based business approach has provided Lululemon with a competitive advantage that is responsible for the brand's strong financial performance. In the period of 2004 – 2012, Lululemon's net revenue has increased from $40 million annually to $1.4 billion, an extraordinary growth of over 3,000% during challenging economic times. Lululemon's growth and success have not gone unnoticed. The brand has earned numerous industry awards and accolades. As an example, Lululemon was named International Retailer of the Year by the National Retail Foundation in 2012.

10.     Lululemon's trademarks are critical to its business. Lululemon is the owner of and has widely promoted several trademarks which have earned substantial fame and considerable goodwill among the public. Lululemon has used its trademarks (collectively or singularly the "LULULEMON Trademarks") on and in association with its entire line of athletic apparel and accessories, as well as in connection with packaging, retail store services (including four retail stores in Chicago), and online e-commerce. Lululemon Products and Services always include at least one of the LULULEMON Trademarks. Often several LULULEMON Trademarks are displayed on a single Lululemon Product or in providing a Lululemon Service. Lululemon incorporates a variety of distinctive marks in its various Lululemon Products and Services. Consequently, the United States Patent and Trademark Office has granted Lululemon multiple federal registrations. Lululemon uses the LULULEMON Trademarks in connection

5

with the marketing of its Lululemon Products and Services. The LULULEMON Trademarks, including but not limited to those listed below, are famous and valuable assets of Lululemon.

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| 4,367,598 | lululemon athletica | CLOTHING, NAMELY, T-SHIRTS, SHIRTS, TANK TOPS, SWEATSHIRTS, SWEATERS, JERSEYS, JUMPERS, PANTS, SWEATPANTS, SHORTS, SKIRTS, DRESSES, JACKETS, COATS, VESTS, UNDERWEAR, SOCKS, WARM-UP SUITS, BODYSUITS, LEOTARDS, TIGHTS, LEGGINGS, LEG WARMERS; HEADWEAR, NAMELY, HATS, CAPS, TOQUES, VISORS, HEADBANDS, BANDANAS; CLOTHING ACCESSORIES, NAMELY, BELTS, SCARVES, SHAWLS, SHOULDER WRAPS, ARM WARMERS, MITTENS, GLOVES; SANDALS IN CLASS 025. |
| 2,607,811 | lululemon athletica | CLOTHING, NAMELY, PANTS, SHIRTS, T-SHIRTS, SHORTS, SWEATSHIRTS, SWEATPANTS, SOCKS, JACKETS, COATS, HATS IN CLASS 025. |
| 2,460,180 | (logo) | CLOTHING, NAMELY, PANTS, SHIRTS, T-SHIRTS, SHORTS, SWEATSHIRTS, SWEATPANTS, SOCKS, JACKETS, COATS, HATS IN CLASS 025. |
| 4,345,516 | (logo) | YOGA BACKPACKS, WAIST PACKS IN THE NATURE OF WATER BOTTLE CARRIERS, MESSENGER BAGS, COSMETIC BAGS SOLD EMPTY, ATHLETIC GYM BAGS, SPORT BAGS, BEACH BAGS, BACKPACKS, TOTE BAGS, HANDBAGS, MESH SHOPPING BAGS, FANNY PACKS IN CLASS 018.<br><br>CLOTHING, NAMELY, T-SHIRTS, SHIRTS, TANK TOPS, SWEATSHIRTS, SWEATERS, JERSEYS, JUMPERS, PANTS, SWEATPANTS, SHORTS, SKIRTS, DRESSES, JACKETS, COATS, VESTS, UNDERWEAR, SOCKS, WARM-UP SUITS, BODYSUITS, LEOTARDS, TIGHTS, LEGGINGS, LEG WARMERS; HEADWEAR, NAMELY, HATS, CAPS, TOQUES, VISORS, HEADBANDS, BANDANAS, BELTS, SCARVES, SHAWLS, SHOULDER WRAPS, ARM WARMERS, MITTENS, GLOVES IN CLASS 025. |

| | | |
|---|---|---|
| | | YOGA MATS, YOGA MAT CARRYING CASES, YOGA BLOCKS; EXERCISE EQUIPMENT, NAMELY, PULL LOOPS, STRETCH BANDS, AND BALANCE BALLS USED FOR YOGA; FLYING DISKS, SKIPPING ROPES; YOGA MAT STRAPS IN CLASS 028. |
| 3,985,876 | LULULEMON ATHLETICA | RETAIL STORE SERVICES FEATURING CLOTHING, APPAREL, ACCESSORIES, HEADWEAR, SOCKS, YOGA EQUIPMENT, ATHLETIC EQUIPMENT BAGS, BACKPACKS, TOTE BAGS, PRE-RECORDED DVDS, FEATURING TOPICS RELATING TO YOGA INSTRUCTION, YOGA PHILOSOPHY, EXERCISE AND HEALTH LIVING IN CLASS 035. |
| 3,990,179 | LULULEMON | RETAIL SERVICES FEATURING CLOTHING, APPAREL, ACCESSORIES, HEADWEAR, SOCKS, YOGA EQUPMENT, ATHLETIC EQUIPMENT, BAGS, BACKPACKS, TOTE BAGS, PRE-RECORDED DVDS, FEATURING TOPICS RELATING TO YOGA INSTRUCTION, YOGA PHILOSOPHY, EXERCISE AND HEALTH LIVING; ONLINE RETAIL STORE SERVICES FEATURING CLOTHING, APPAREL, ACCESSORIES, HEADWEAR, SOCKS, YOGA EQUIPMENT, ATHLETIC EQUIPMENT, BAGS, BACKPACKS, TOTE BAGS, PRE-RECORDED DVDS, FEATURING TOPICS RELATING TO YOGA INSTRUCTION, YOGA PHILOSOPHY, EXERCISE AND HEALTH LIVING IN CLASS 035. |
| 3,985,877 |  | RETAIL STORE SERVICES FEATURING CLOTHING, APPAREL, ACCESSORIES, HEADWEAR, SOCKS, YOGA EQUIPMENT, ATHLETIC EQUIPMENT, BAGS, BACKPACKS, TOTE BAGS, PRE-RECORDED DVDS, FEATURING TOPICS RELATING TO YOGA INSTRUCTION, YOGA PHILOSOPHY, EXERCISE AND HEALTH LIVING; ONLINE RETAIL STORE SERVICES FEATURING CLOTHING, APPAREL, ACCESSORIES, HEADWEAR, SOCKS, YOGA EQUIPMENT, ATHLETIC EQUIPMENT, BAGS, BACKPACKS, TOTE BAGS, PRE-RECORDED DVDS, FEATURING TOPICS RELATING TO YOGA INSTRUCTION, YOGA PHILOSOPHY, EXERCISE AND HEALTH LIVING IN CLASS 035. |

| | | |
|---|---|---|
| 3,985,881 |  lululemon athletica | RETAIL STORE SERVICES FEATURING CLOTHING, APPAREL, ACCESSORIES, HEADWEAR, SOCKS, YOGA EQUIPMENT, ATHLETIC EQUIPMENT, BAGS, BACKPACKS, TOTE BAGS, PRE-RECORDED DVDS, FEATURING TOPICS RELATING TO YOGA INSTRUCTION, YOGA PHILOSOPHY, EXERCISE AND HEALTH LIVING IN CLASS 035. |
| 4,356,115 | BOOBY BRACER | BRAS, SPORTS BRAS IN CLASS 025. |
| 3,795,820 | BOOLUX | T-SHIRTS; SHIRTS; TANK TOPS; SWEAT SHIRTS; SWEATERS; PANTS; SWEAT PANTS; SHORTS; SKIRTS; DRESSES; WARM UP SUTIS; BODY SUITS; LEOTARDS; UNITARDS; TIGHTS; COVERUPS; LEGGINGS; LEG WARMERS; JACKETS; COATS; VESTS; SCARVES; SHAWLS; SHOULDER WRAPS; PAJAMAS; ROBES; UNDERWEAR; SOCKS; GLOVES; HEADWEAR, NAMELY, HATS, CAPS, BERETS, TOQUES, VISORS, HEADBANDS, BANDANAS IN CLASS 025. |
| 4,234,113 | DEFINE JACKET | CLOTHING, NAMELY, JACKETS IN CLASS 025. |
| 3,978,257 | GROOVE | YOGA PANTS IN CLASS 025. |
| 3,978,258 | GROOVE PANT | YOGA PANTS IN CLASS 025. |
| 3,024,374 | LUON | CLOTHING, NAMELY, T-SHIRTS, SHIRTS, PANTS, SHORTS, SWEATSHIRTS, SWEATPANTS, TANK TOPS, UNDERWEAR, SOCKS, JACKETS, COATS AND HATS FOR MEN, WOMEN AND CHILDREN IN CLASS 025. |
| 3,976,389 | LUXTREME | BODY SUITS; JACKETS; LEGGINGS; PANTS; SHIRTS; SHORTS; SKIRTS; TANK TOPS; TIGHTS IN CLASS 025. |
| 4,214,052 | POWER Y | CLOTHING, NAMELY, TANK TOPS, BRAS IN CLASS 025. |
| 4,219,265 | RULU | CLOTHING, NAMELY, T-SHIRTS, SHIRTS, PANTS, SHORTS, SWEATSHIRTS, SWEATPANTS, TANK TOPS, UNDERWEAR, SOCKS, JACKETS, COATS AND HATS FOR MEN, WOMEN AND CHILDREN IN CLASS 025. |

| 4,333,759 | SCUBA | CLOTHING, NAMELY, HOODED SWEATSHIRTS, JACKETS, COATS, TOPS IN CLASS 025. |
|---|---|---|
| 4,033,939 | SET-MY-PONYTAIL-FREE | CLOTHING, NAMELY, HOODED SWEATSHIRTS, JACKETS AND COATS; HEADWEAR, NAMELY, HATS AND CAPS IN CLASS 025. |
| 3,116,371 | SILVERESCENT | CLOTHING, NAMELY T-SHIRTS, SHIRTS, PANTS, SHORTS, SKIRTS, DRESSES, SWEATSHIRTS, SWEATPANTS, TANK TOPS, UNDERWEAR, SOCKS, JACKETS, COATS, HEADWEAR, FOOTWEAR IN CLASS 025. |
| 4,214,049 | WUNDER UNDER | CLOTHING, NAMELY CROP PANTS, PANTS, SHORTS, TIGHTS, LEGGINGS IN CLASS 025. |

11.     The U.S. registrations for the LULULEMON Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.   The LULULEMON Trademarks have been used exclusively and continuously by Lululemon and its subsidiaries, some since at least as early as 1998, and have never been abandoned.  A true and correct copy of the registrations for the LULULEMON Trademarks referenced above is attached hereto as **Exhibit 1.**

12.     The LULULEMON Trademarks are exclusive to Lululemon, and are displayed extensively on Lululemon Products, in association with providing the Lululemon Services, and in Lululemon's marketing and promotional materials.   Lululemon Products have long been among the most popular athletic and yoga apparel in the world and have been extensively promoted at great expense.  In fact, Lululemon expends millions of dollars annually promoting and marketing the LULULEMON Trademarks.  Lululemon Products and Services have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative

designs and renown as desired luxury items. Because of these and other factors, the Lululemon name and the LULULEMON Trademarks have become famous throughout the United States.

13. The LULULEMON Trademarks are distinctive when applied to the Lululemon Products and Services, signifying to the purchaser that the products or services come from Lululemon and are consistent with Lululemon's quality standards. Whether Lululemon manufactures the products itself or licenses others to do so, Lululemon has ensured that products bearing the LULULEMON Trademarks are manufactured to the highest quality standards, and likewise ensures that the provision of retail store services under the LULULEMON Trademarks is consistent with the highest quality standards. The LULULEMON Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the LULULEMON Trademarks is of incalculable and inestimable value to Lululemon.

**The Defendants**

14. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets Illinois residents and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit Lululemon Products and/or provide Counterfeit Lululemon Services to consumers within the State of Illinois.

15.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products and to provide retail store services using counterfeit versions of the LULULEMON Trademarks in the same transaction, occurrence, or series of transactions or occurrences.  Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Lululemon to learn Defendants' true identities and the exact interworking of their massive counterfeit network.  In the event that Defendants and/or third party service providers provide additional credible information regarding the identities of Defendants, Lululemon will take appropriate steps to amend the Complaint.


## IV. DEFENDANTS' UNLAWFUL CONDUCT

16.     The overwhelming success of the Lululemon brand has resulted in significant counterfeiting of the brand.  Consequently, Lululemon has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers.  Despite Lululemon's enforcement efforts online and on the ground, Defendants have persisted in creating the Defendant Internet Stores, which generate massive profits selling Counterfeit Lululemon Products and providing Counterfeit Lululemon Services.  Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales.  The U.S. government seized over $1.26 billion in counterfeit goods in 2012, up from $1.11 billion in 2011.  Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost U.S. jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

17.     Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be a genuine Lululemon retail store or an authorized online retailer, outlet store, or wholesaler selling genuine Lululemon Products and/or providing genuine Lululemon Services.   Defendants' websites and marketplace listings look sophisticated and accept payment in U.S. dollars.   Numerous Defendant Domain Names also incorporate the LULULEMON Trademarks into the URL, and oftentimes include Lululemon's copyright-protected content, images, and product descriptions on the websites to make it very difficult for consumers to distinguish such counterfeit sites from Lululemon's website or an authorized retailer.  Some of the Defendant Internet Stores even go so far as to admit to selling counterfeit products, explicitly stating that they are offering "replica" or "fake" Lululemon products for sale. Lululemon has not licensed or authorized Defendants to use any of the LULULEMON Trademarks, and none of the Defendants are authorized resellers of genuine Lululemon Products or providers of genuine Lululemon Services.

18.     The Defendant Internet Stores accept payment via Western Union, credit card and/or PayPal and ship the Counterfeit Lululemon Products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.  A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.  Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, and other logos.

19.     Defendants also deceive unknowing consumers by using the LULULEMON Trademarks without authorization within the content, text, and/or meta tags of their websites in

order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Lululemon Products or Services. Additionally, upon information and belief, Defendants also use other unauthorized search engine optimization (SEO) tactics to increase website rank. As a result, links to Defendants' websites show up at or near the top of popular search results and misdirect consumers searching for genuine Lululemon Products or Services.

20.    Additionally, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Many of Defendants' names and addresses used to register the Defendant Internet Stores are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names use a privacy service that conceals the owners' identity and contact information. On information and belief, Defendants constantly register new Defendant Internet Stores using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many tactics used by the Defendants to conceal both their identities and the full scope and interworking of their massive illegal counterfeiting operation.

21.    Even though Defendants operate under multiple fictitious names, many similarities between the Defendant Internet Stores indicate a coordinated effort to sell Counterfeit Lululemon Products and provide Counterfeit Lululemon Services. For example, many of the Defendant Internet Stores have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit Lululemon Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Lululemon Products were

manufactured by and come from a common source and that Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, and the use of the same text and copyright-protected images copied from Lululemon's official <lululemon.com> website.

22.     Defendants, without any authorization or license from Lululemon, have knowingly and willfully used and continue to use the LULULEMON Trademarks in connection with the advertisement, offering for sale, and sale of Counterfeit Lululemon Products and Services in and into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to Illinois residents and, on information and belief, each Defendant has sold Counterfeit Lululemon Products into Illinois.

23.     Defendants' use of the LULULEMON Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Lululemon Products and Services, including into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Lululemon. Lululemon, in fact, regularly receives complaints and inquiries from U.S. consumers who have been deceived by the Defendant Internet Stores or similar internet stores and have unknowingly purchased Counterfeit Lululemon Products over the internet.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

24.     Lululemon re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 23.

25.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered LULULEMON Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods and services.  The LULULEMON Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Lululemon's products and services offered, sold or marketed under the LULULEMON Trademarks.

26.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products and services bearing counterfeit reproductions of the LULULEMON Trademarks without Lululemon's permission.

27.     Upon information and belief, Defendants have knowledge of Lululemon's rights in the LULULEMON Trademarks, and are willfully infringing and intentionally using counterfeits of the LULULEMON Trademarks.  Defendants' willful, intentional and unauthorized use of the LULULEMON Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods and services among the general public.

28.     Defendants' illegal activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

29.     Lululemon has no adequate remedy at law, and if Defendants' actions are not enjoined, Lululemon will continue to suffer irreparable harm to its reputation and the goodwill of its well-known LULULEMON Trademarks.

30.     The injuries and damages sustained by Lululemon have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Lululemon Products and Services.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

31.     Lululemon hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 30.

32.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Lululemon Products and Services has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Lululemon or the origin, sponsorship, or approval of Defendants' Counterfeit Lululemon Products and Services by Lululemon.

33.     By using the LULULEMON Trademarks on the Counterfeit Lululemon Products and Services, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Lululemon Products and Services.

34.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Lululemon Products and Services to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

16

35.     Lululemon has no adequate remedy at law and, if Defendants' actions are not enjoined, Lululemon will continue to suffer irreparable harm to its reputation and the goodwill of its Lululemon brand.

**COUNT III**
**CLAIM FOR INJUNCTIVE RELIEF UNDER THE ANTICYBERSQUATTING**
**CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d)) AS TO THE DEFENDANTS**
**OPERATING A DEFENDANT DOMAIN NAME INCORPORATING THE**
**LULULEMON TRADEMARKS**

36.     Lululemon hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 35.

37.     Lululemon is the exclusive owner of the LULULEMON Trademarks.  The LULULEMON Trademark Registrations (Exhibit 1) are in full force and effect.  Additionally, the LULULEMON Trademarks are famous marks pursuant to 15 U.S.C. § 1125 and were famous before and at the time of the registration of the Defendant Domain Names.

38.     Upon information and belief, Defendants have acted with the bad faith intent to profit from the unauthorized use of the LULULEMON Trademarks and the goodwill associated therewith by registering various domain names which are identical to, confusingly similar to, or dilutive of the LULULEMON Trademarks.

39.     Defendants have no intellectual property rights in or to the LULULEMON Trademarks.

40.     Defendants' actions constitute willful cyberpiracy in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

41.     Lululemon has no adequate remedy at law, and the registration and use of the Defendant Domain Names has caused, is causing, and is likely to continue to cause substantial and irreparable injury to the public and to Lululemon.

## COUNT IV
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, et seq.)

42.     Lululemon hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 41.

43.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Lululemon Products as those of Lululemon; causing a likelihood of confusion and/or misunderstanding as to the source of their goods or services; causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Lululemon Products and Services; representing that their products or services have Lululemon's approval when they do not; and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

44.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

45.     Lululemon has no adequate remedy at law, and Defendants' conduct has caused Lululemon to suffer damage to its reputation and goodwill.  Unless enjoined by the Court, Lululemon will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Lululemon prays for judgment against Defendants as follows:

1)  That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a.  using the LULULEMON Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product or service that is not a genuine Lululemon Product or Service or is not authorized by Lululemon to be sold in connection with the LULULEMON Trademarks;

b.  passing off, inducing, or enabling others to sell or pass off any product or service as a genuine Lululemon Product or Service or any other service or product produced by Lululemon that is not Lululemon's or not produced under the authorization, control, or supervision of Lululemon and approved by Lululemon for sale under the LULULEMON Trademarks;

c.  committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Lululemon Products or Services are those sold or provided under the authorization, control, or supervision of Lululemon, or are sponsored, approved by, or connected with Lululemon;

d.  further infringing the LULULEMON Trademarks and damaging Lululemon's goodwill;

e.  otherwise competing unfairly with Lululemon in any manner;

f.  shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Lululemon, nor authorized by Lululemon to be sold or offered for sale, and which bear any LULULEMON Trademarks, including the LULULEMON Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof;

19

g.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, the Online Marketplace Accounts, the Defendant Domain Names, or any other domain name or online marketplace account that is being used to sell Counterfeit Lululemon Products or provide Counterfeit Lululemon Services; and

h.  operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product or service that is not a genuine Lululemon Product or Service or not authorized by Lululemon to be sold or offered in connection with the LULULEMON Trademarks; and

2) That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Lululemon a written report under oath setting forth in detail the manner in which Defendants have complied with paragraph 1, a through h, supra;

3) Entry of an Order that the domain name registries for the Defendant Domain Names, namely, VeriSign, Inc., Neustar, Inc., Afilias Limited, and the Public Interest Registry, within two (2) business days of receipt of this Order, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Lululemon's selection until further ordered by this Court, and that the domain name registrars take any steps necessary to transfer the Defendant Domain Names to a registrar of Lululemon's selection until further ordered by this Court;

4) Entry of an Order that, upon Lululemon's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as iOffer, social media

platforms such as Facebook, YouTube, LinkedIn and Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts, domain name registrars and domain name registries, shall:

    a.  disable and cease providing services for any accounts through which Defendants engage in the sale or provision of Counterfeit Lululemon Products or Services using the LULULEMON Trademarks, including any accounts associated with the Defendants listed on Schedule A;

    b.  disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale or provision of Counterfeit Lululemon Products or Services using the LULULEMON Trademarks; and

    c.  Take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index; and

5)  Entry of an Order that Discovery herein by Lululemon may continue by providing actual notice, pursuant to subpoena, e-mail or otherwise, of this Order to any of the following:

    a.  Defendants, their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them;

    b.  any banks, savings and loan associations, payment processors or other financial institutions, including, without limitation, PayPal, or other merchant account providers, payment providers, third party payment processors, and credit card associations (e.g., MasterCard and VISA), which receive payments or hold assets on Defendants' behalf; or

    c. any third party service providers, including, without limitation, the online B2B selling platforms including iOffer, Internet service providers, backend service providers, web designers, sponsored search engine or ad-word providers, shippers, domain name registrars and domain name registries who have provided services for Defendants; and

6) Entry of an Order that any third party providing services in connection with any of the Defendants, Defendants' websites at the Defendant Domain Names or other websites operated by Defendants, including, without limitation, Internet Service Providers ("ISP"), back-end service providers, web designers, sponsored search engine or ad-word providers, banks, merchant account providers including PayPal, third party processors and other payment processing service providers, shippers, domain name registrars and domain name registries (collectively, the "Third Party Providers") shall, within two (2) business days after receipt of such notice, provide to Deckers copies of all documents and records in such person's or entity's possession or control relating to:

    a. The identities and addresses of Defendants, their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them and the locations and identities of Defendants' operations, including, without limitation, identifying information associated with Defendants' Websites, the Defendant Domain Names and financial accounts;

    b. Defendants' websites;

    c. The Defendant Domain Names or any domain name registered by Defendants; and

    d. Any financial accounts owned or controlled by Defendants, including their agents, servants, employees, confederates, attorneys, and any persons acting in concert or

participation with them, including such accounts residing with or under the control of any banks, savings and loan associations, payment processors or other financial institutions, including, without limitation, PayPal, Western Union, or other merchant account providers, payment providers, third party processors, and credit card associations (e.g., MasterCard and VISA); and

7) That Defendants account for and pay to Lululemon all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged and that the amount of damages for infringement of the LULULEMON Trademarks be increased by a sum not exceeding three times the amount thereof as provided by law;

8) In the alternative, that Lululemon be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the LULULEMON Trademarks and $100,000 per domain name pursuant to 15 U.S.C. § 1117(d);

9) That Lululemon be awarded its reasonable attorneys' fees and costs; and

10) Award any and all other relief that this Court deems just and proper.

Dated this 4th day of September 2013.          Respectfully submitted,


   __/s/ Justin R. Gaudio_____
   Kevin W. Guynn
   Tom R. Fitzsimons
   Justin R. Gaudio
   Greer, Burns & Crain, Ltd.
   300 South Wacker Drive
   Suite 2500
   Chicago, Illinois 60606
   312.360.0080
   312.360.9315 (facsimile)
   kguynn@gbclaw.net
   tfitzsimons@gbclaw.net
   jgaudio@gbclaw.net

   *Counsel for Lululemon Athletica Canada Inc.*

23